In Re Lucille MART, Debtor.

**CHICAGO TITLE INSURANCE COMPANY, INC., Plaintiff,**

v.

**Lucille MART, Defendant.**

**Bankruptcy No. 87–04269–BKC–SMW.**
**Adv. No. 88–0112–BKC–SMW–A.**

United States Bankruptcy Court,
S.D. Florida.

June 20, 1988.

Patricia A. Redmond, Miami, Fla., for Lucille Mart.

Robert L. Jennings, Holland & Knight, Ft. Lauderdale, Fla., for Chicago Title Ins. Co.

Robert L. Roth, Miami, Fla., Trustee.

Steven H. Friedman, Miami, Fla., for Trustee.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

SIDNEY M. WEAVER, Bankruptcy Judge.

THIS CAUSE came on before the Court on March 29, 1988 and May 16, 1988, upon the Complaint of Chicago Title Insurance Company, Inc. objecting to the debtor's discharge pursuant to 11 U.S.C. § 727(c)(1) and Bankruptcy Rule 4004(a), and the Court, having heard the testimony, examined the evidence presented, observed the candor and demeanor of the witnesses, considered the arguments of counsel, and being otherwise duly advised in the premises, does hereby make the following Findings of Fact and Conclusions of Law:

Jurisdiction is vested in this Court pursuant to 28 U.S.C. §§ 157(a), (b)(2)(J), and 1334(b), and the District Court's General Order of Reference. This is a core proceeding in which the Court is authorized to hear and determine all matters relating to this case in accordance with 28 U.S.C. § 157(b)(2)(J).

The title company is a creditor of this estate by virtue of the debtor's execution of a personal guaranty. This guaranty was signed by the debtor, as the former

spouse of Gilbert Mart, to cover certain business ventures involving the debtor's former husband and her sons. The debtor had no personal involvement in these ventures and the liability is derived solely from the debtor's execution of the· guaranty. The title company obtained a prepetition judgment against the debtor, and her former husband, based upon the execution of this guaranty, in the amount of $3,428,-317.20. The title company now seeks to bar the debtor's discharge.

In the past, the Mart family enjoyed considerable financial prosperity from the husband's and son's involvement in Florida land development. During this period of prosperity, the husband submitted personal financial statements listing the ongoing projects and reflecting substantial assets and other holdings.

Subsequently, several of the development projects failed or were liquidated in order to derive sufficient cash flows to salvage the remaining projects. Moreover, due to various factors, several of the projects were ultimately forced into bankruptcy in this district, and this Court has taken judicial notice of same. (See *Riverside Shoppes, Ltd.*, Case No. 87–02233–BKC–SMW, and *Beacon 21 Development Corporation*, Case No. 86–00888–BKC–TCB.)

During the foregoing period of time, the herein debtor had no active involvement in these business ventures, as her role was that of a housewife and mother. Furthermore, as the debtor was unsophisticated in financial matters, she totally relied on her husband regarding all such items, and, other than small household expenses, the husband directed and controlled all other family investments and expenditures.

On May 7, 1987, the debtor and her husband obtained a divorce, which was caused, in large part, by the increasing financial problems. At the time of the divorce, a property settlement agreement was entered into, wherein the debtor allocated all her interests in properties and marital assets, in any way related to the businesses, to her former husband, in exchange for $1,000.00 monthly permanent alimony (to provide her sufficient monies to fund the mortgage payment on her home), a car and medical insurance. Additionally, the debtor was entitled to keep all the furnishings in the marital residence as lump sum alimony.

On November 24, 1987, the debtor filed her voluntary petition under Chapter 7. Fifteen days thereafter she submitted her Schedules, Statement of Affairs and List of Creditors, which inadvertently did not include the details of her property settlement agreement, or the existence of several bank accounts. Through several avenues of investigation, and primarily based on discussions with her ex-husband, regarding financial information known only to him, various information came to the debtor's attention, at which time she promptly amended her schedules to reflect same. The Court takes judicial notice that the bank accounts which were added by amendment to the debtor's schedules were listed and fully disclosed in her former husband's Chapter 7 petition, now pending with this Court, under Case No. 87–04526–BKC–TCB. The Court is also cognizant of the fact that the title company had garnished several of these bank accounts, and through previous depositions of the debtor and her former spouse was fully aware of the existence of these accounts, and have therefore suffered no harm from the delayed listing of these items.

The debtor has provided her personal records to her Chapter 7 Trustee, who has valued her personal property at $2,335.00 and entered into a stipulation for the repurchase of the non-exempt assets.

By virtue of this complaint, the title company now seeks a denial of the debtor's discharge pursuant to 11 U.S.C. § 727(a)(2), alleging a transfer or continuing concealment of assets within one year preceding the filing of the debtor's Chapter 7 petition with the intent to delay, hinder or defraud her creditors or the Trustee therein; § 727(a)(3), alleging the debtor's failure to keep adequate books and records; § 727(a)(4)(A) and (D), alleging knowing and fraudulent falsehoods or withholding of information or records relating to the

debtor's financial affairs; and § 727(a)(5), alleging an inability to explain a diminution of assets.

The title company's first objection to the debtor's discharge is grounded in 11 U.S.C. § 727(a)(2), and the allegations that the debtor transferred various items of jewelry and an interest in commercial property, to an irrevocable trust, and also transferred the income stream from that trust that accrued to the debtor's benefit, within one year of filing the bankruptcy petition with the intent to hinder, delay or defraud creditors of this estate, more specifically, the title company.

11 U.S.C. § 727(a)(2) provides:

(a) The Court shall grant the debtor a discharge, unless—

(2) The debtor, with intent to hinder, delay or defraud a creditor or an officer of the estate charged with custody of property under this Title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed

(A) property of the debtor, within one year before the date of filing the petition; ...

■ It is axiomatic under the bankruptcy laws, that courts narrowly construe exceptions to discharge in bankruptcy against the creditor and in favor of the debtor. *Fox v. Cohen (In re Cohen)*, 47 B.R. 871 (Bkrtcy.S.D.Fla.1985); *Matter of Campbell*, 74 B.R. 805 (Bkrtcy.M.D.Fla. 1987). In order for a party objecting to discharge to meet his burden of proof, evidence must be such that, when considered in light of all the facts, it leads the court to the conclusion that the debtor has violated the spirit of the bankruptcy laws and therefore should be denied the privilege of eliminating the legal obligation of his debts. *Cohen, supra* at 874. To warrant a denial of discharge in bankruptcy, the transfer must be an actual transfer of valuable property which reduces the assets available to the creditors, and which is made with fraudulent intent. *Matter of Agnew*, 818 F.2d 1284, 1289 (7th Cir.1987). Section 727(a)(2) provides, in part that the act com-

plained of must be done with the *intent* to hinder, delay or defraud a creditor or officer of the estate. "This intent must be actual and fraudulent intent as distinguished from constructive intent." *Cohen, supra,* at 875. *Matter of Agnew*, 818 F.2d 1284 (7th Cir.1987). Furthermore, the statute providing for a denial of discharge on the ground that the property was transferred with the intent to hinder, delay or defraud a creditor within one year before the date of filing of a petition, is not meant to reach all bad acts occurring prior to bankruptcy, but only to reach those occurring within a one year limitation. *Bernstein v. Zeiss, Inc. (In re Bernstein)*, 78 B.R. 619 (S.D.Fla.1987).

■ The court finds, based upon the undisputed testimony, that the debtor's alleged transfer of her jewelry to her daughter, consisted of small items of inconsequential value made prior to the one year period preceding to the filing of the instant bankruptcy petition. Accordingly, these transfers are outside the statutory provisions of 11 U.S.C. § 727(a)(2)(A).

■ The court further finds that, although the debtor did sign a deed that resulted in the transfer of commercial property into an irrevocable trust, the debtor owned no interest in the commercial property prior to the execution of the deed, that the signature was to release any claims of dower that may thereafter accrue, and that there was therefore no transfer of an interest as previously owned by the debtor.

■ It is undisputed that after the commercial property was transferred into the irrevocable trust, the debtor received a right to receive income from said trust. This right to receive income was transferred to her former spouse as part of her agreement to transfer all the business interests to her former husband in the divorce proceedings, and pursuant to the property settlement agreement executed therein. The court, in making a determination of whether transfers are made with the intent to hinder and delay or defraud creditors, must look at the totality of the circumstances surrounding said transfers.

In the matters *sub judice*, the court finds the transfer of the debtor's income interest to her former spouse, is part and parcel of the reasonable and credible disbursement of property interests relating to a divorce proceeding, and was not made with the intent to hinder, delay or defraud creditors.

The title company further objects to the debtor's discharge for concealing, destroying or failing to maintain records from which her financial condition or business transactions may be ascertained, under 11 U.S.C. § 727(a)(3). The statutory language provides:

> (a) the court shall grant the debtor a discharge, unless—
>
> (3) the debtor has concealed, destroyed, mutilated, falsified or failed to keep or preserve any recorded information, including books, documents, records and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act is justified under all of the circumstances of the case;

The purpose of bankruptcy code provision denying debtor's discharge for concealing, destroying or failing to preserve information regarding financial condition, is to insure that trustee and creditors receive sufficient information so that they can trace debtor's financial history from a reasonable period in past to present. *In re McCall*, 76 B.R. 490 (Bkrtcy.E.D.Pa.1987).

■ Whether the debtor's books and records are adequate to avoid being denied discharge must be gauged on a case by case basis, according to special characteristics of the debtor's occupation, business, and personal financial structure. *In re Drenckhahn*, 77 B.R. 697, 708 (Bkrtcy.D. Minn.1987). The adequacy of the debtor's financial records is determined after considering relevant factors, including the debtor's education, business experience, and sophistication, complexity of the debtor's business, ... and all other circumstances. *Seidle v. Escobar (In the Matter of Escobar)*, 53 B.R. 382, 384 (Bkrtcy.S.D. Fla.1985). *Drenckhahn, supra* at 708.

■ The Court finds that the testimony and evidence clearly establish that the debtor was unsophisticated in business transactions and totally relied upon her former spouse regarding all financial matters.

The Court further finds that the debtor and her former spouse have submitted to countless hours of depositions and other investigations, and produced substantial records and other financial information, sufficient to bar an objection to discharge for failure to provide same. Additionally, this Court finds that the debtor has personally maintained adequate books and records, given her level of sophistication and expertise.

The creditor has also objected to the debtor's discharge under 11 U.S.C. § 727(a)(4)(A) and (D), which provides:

> (a) the court shall grant the debtor a discharge, unless—
>
> (4) the debtor knowingly and fraudulently, in or in connection with the case
>
> (A) made a false oath or account ...
>
> (D) withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records and papers, relating to the debtor's property or financial affairs.

Bankruptcy Rule 4005 places the burden of proof on the party objecting to discharge. This burden must be met with clear evidence that is clear and convincing. *Cohen, supra* at 874.

The record in this proceeding is devoid of any evidence of the elements necessary to deny a debtor's discharge under § 727(a)(4)(D) and accordingly, the creditor's objection to discharge fails for failure to establish the elements necessary to entitle them to relief.

■ It is well established that a debtor should be granted a discharge under § 727(a)(4) unless there is an *intentional* effort made to defraud. *Cohen, supra,* at 874, citing *In re Schnoll*, 31 B.R. 909, 912 (Bkrtcy.E.D.Wis.1983); *In re Kirst*, 37 B.R. 275 (Bkrtcy.E.D.Wis.1983). As has been enunciated in the past by this Court,

the basic rule in Bankruptcy Court in the Southern District of Florida is that any false oath must be made intentionally and must hinder the administration of the estate ... the element of fraud required to satisfy 727(a)(4) is established when statements are made "with a calculated disregard for the importance of the documents signed under penalty of perjury." *Cohen,* at 874 citing *In re Wasserman,* 33 B.R. 779, 780 (Bkrtcy.S.D.Fla. 1983).

After a thorough analysis of the testimony and evidence presented, the Court finds that the debtor was unaware of the existence of certain assets and liabilities that should have been scheduled in the instant proceedings, but that upon her discovery of same, she immediately amended her schedules to appropriately reflect this information. Absent extrinsic evidence of fraud, this Court will consider the totality of the circumstances, including the debtor's level of sophistication in financial affairs, noting the numerous amendments that have been filed, thereby negating the allegations of fraudulent intent, and demonstrating the debtor's good faith and desire to conform with the statutory requirements.

Additionally, the Court has taken judicial notice of the schedules as filed in her former husband's bankruptcy proceeding (*In re Gilbert Mart,* Bankruptcy Case No. 87-04526–BKC–TCB), wherein the debtor husband, who was fully knowledgeable of the financial affairs, fully disclosed all financial information, which was later disclosed in these proceedings through amendments.

Accordingly, the debtor's failure to initially disclose certain items does not rise to a level of intentional effort to defraud or calculated disregard for the importance of these documents, sufficient to deny her discharge.

The title company's final objection to discharge is based upon § 727(a)(5) which bars a debtor's discharge if the debtor has failed to satisfactorily explain any loss of assets or deficiency of assets to meet the debtor's liabilities. The basis of the creditor's objection is founded on a personal financial statement, prepared by the debtor's former husband, which listed various ongoing projects, assets and other commercial holdings.

To establish that a discharge should be denied on the grounds that the debtor has failed to satisfactorily explain a loss of assets or deficiency of assets to meet liabilities, the burden is on the plaintiff to establish that: (1) the debtor owned substantial identifiable assets at a time not too remote in time from the date of commencement of the case, (2) that on the date of filing voluntary petition the debtor no longer had the particular asset, and (3) that when called upon to explain its disposition, the debtor was unable to furnish a satisfactory explanation. The ultimate burden of persuasion on the issue remains at all times with the party objecting to discharge, although the statute places a burden of production upon the debtor. *Bernstein, supra,* at 622.

The debtor's former husband, as the party most knowledgeable of these financial affairs, explained in great detail the history and current status of each of the real estate projects, and any and all diminution in the value of the business assets or profitability, as previously reflected in the financial statement at issue. Based upon the totality of testimony and evidence presented, the Court finds that the debtor has sufficiently and satisfactorily accounted for any loss of assets, or the reduced value of same.

As set forth herein, the Court finds that the title company has failed to meet the burden of proof and to adequately establish the elements necessary to bar the debtor's discharge under 11 U.S.C. § 727(a)(2), (a)(3), (a)(4)(A) and (D) and (a)(5). Accordingly, the creditor's objection to the debtor's discharge is hereby denied.

A separate final judgment of even date has been entered in conformity herewith.